679 A.2d 106

SAMUEL GANTES, ADMINISTRATOR AD PROSEQUENDUM OF GRACIELA GONZALEZ, ON BEHALF OF THE ESTATE OF GRACIELA GONZALEZ AND ON BEHALF OF THE HEIRS-AT-LAW OF GRACIELA GONZALEZ, PLAINTIFF-APPELLANT, v. KASON CORPORATION, DEFENDANT-RESPONDENT, AND OTTO CUYLER ASSOCIATES AND XYZ CO. I–V (BEING FICTITIOUS BUSINESS ENTITIES WHOSE IDENTITIES ARE CURRENTLY UNKNOWN), DEFENDANTS.

Argued October 10, 1995—Decided July 23, 1996.

480

*Alan Y. Medvin* argued the cause for appellant (*Medvin & Elberg,* attorneys).

*Peter B. Van Deventer, Jr.,* argued the cause for respondent (*Robinson, St. John & Wayne,* attorneys; *Douglas H. Amster* and *John S. Wisniewski,* on the brief).

The opinion of the Court was delivered by

HANDLER, J.

In this case, a young woman, working in a chicken processing plant in Georgia, was killed when struck in the head by a moving part of a machine. The machine had been manufactured more than thirteen years before the fatal accident by a New Jersey corporation with its principal place of business in Linden, New Jersey.

Representatives of the decedent, asserting that the machine was defective, brought this personal-injury action based on claims of survivorship and wrongful-death against the New Jersey manufac-

turer in the Law Division in Union County. The action was filed within New Jersey's two-year statute of limitations for personal-injury actions, but beyond Georgia's ten-year statute of repose applicable to products-liability claims against manufacturers. Because of the conflict between the two statutes, the case poses a fundamental choice-of-law issue over which statute applies and whether, depending on that choice, the action will be barred.

## I

Graciela Gonzalez was a twenty-two year-old who lived in Georgia with her husband and two small children. She was employed at a chicken processing plant called Dutch Quality House in Gainesville, Georgia. On February 27, 1991, Ms. Gonzalez was killed at work when she was struck in the head by a moving part of a shaker machine. Plaintiff Samuel Gantes, also a Georgia resident, is the administrator *ad prosequendum* for the estate and heirs of the decedent.

The shaker machine was manufactured by defendant Kason Corporation, which is a New Jersey corporation with its principal place of business in Linden, New Jersey. It was disputed below whether the machine was manufactured at defendant's New Jersey plant, or at one of its plants in New York. However, for purposes of the disposition by summary judgment, the courts below assumed that defendant manufactured the machine in New Jersey.

Evidence indicating New Jersey manufacture included the original certification to the trial court of Kason's president, Lawrence H. Stone. This certification expressly stated that defendant manufactured the shaker machine, a forty-eight inch "Kason Vibroscreen," in the Linden, New Jersey plant. In addition, numerous documents affixed to Stone's original certification, consisting of correspondence, invoices, receipts, and the like, indicate that the machine was manufactured in and shipped from New Jersey. They indicate that defendant originally sold the shaker machine in 1977 to Salvo Corporation of Fall River, Massachusetts, for ship-

ment to Snyder's Potato Chips in Berlin, Pennsylvania. Thus, all of the correspondence from defendant regarding that original sale and shipment to Snyder's Potato Chips contain a New Jersey return address. With one exception, all of the receipts, invoices and other similar documents regarding that sale and shipment contain defendant's New Jersey letterhead. In addition, the "purchase order" sent from Salvo Corporation to defendant was directed to a New Jersey address belonging to defendant. Finally, the Federal Express invoice that documents the shipment of the machine to Snyder's Potato Chips reflects that defendant made that shipment from its offices in Linden, New Jersey. The "Instruction Manual" for the Kason Vibroscreen, another document affixed to Stone's original certification, also supports the conclusion that defendant manufactured the machine in New Jersey. That manual lists defendant's Linden, New Jersey address and telephone number as the point of contact for "additional information or assistance." [1]

It is undisputed that defendant placed the shaker machine into the stream of commerce in November 1977 when it shipped the machine to Snyder's Potato Chips in Pennsylvania. After April 1985, Snyder's Potato Chips sold the machine to Otto Cuyler Associates. Otto Cuyler Associates later sold the machine to Dutch Quality House, Ms. Gonzalez's Georgia employer.

On February 23, 1993, plaintiff filed this action on behalf of the estate and heirs of Ms. Gonzalez against defendant Kason Corporation and Otto Cuyler Associates and various unidentified busi-

---

[1] Other evidence indicates that defendant manufactured the shaker machine at its plant in Champlain, New York. For example, defendant's president's supplemental certification asserts that the serial number assigned to the machine at issue indicates that defendant manufactured the machine in Champlain, New York, although, that supplemental certification neither denies nor explains the president's earlier, unequivocal statement that the machine in question was manufactured in New Jersey. In addition, a "specification sheet" for the machine, which reflects the shipment of the shaker machine to Snyder's Potato Chips in Pennsylvania, contains a stamp that reads, "Rec'd Kason Corporation, Champlain, N.Y., Sep. 9 1977."

ness entities. The complaint seeks money damages based on strict liability. Defendant filed an answer that contained a general denial of liability, as well as numerous affirmative defenses, crossclaims for contribution and indemnification against all codefendants. The trial court, in a published opinion, 278 *N.J.Super.* 473, 651 *A*.2d 503 (Law Div.1993), determined that Georgia's statute of repose applies and bars plaintiff's action, and granted defendant's motion for summary judgment. The Appellate Division affirmed that judgment. 276 *N.J.Super.* 586, 648 *A*.2d 517 (App.Div.1994). Based on a dissent in the Appellate Division, the appeal is before us as of right. *R.* 2:2–1(a)(2).

## II

■■■ The issue before the Court is whether to invoke the Georgia statute of repose or the New Jersey statute of limitations. Because the action was brought in New Jersey, the issue must be determined in accordance with this State's choice-of-law rule. New Jersey's rule applies a flexible "governmental-interest" standard, which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation. *Veazey v. Doremus,* 103 *N.J.* 244, 247–49, 510 *A*.2d 1187 (1986); *see State Farm Mutual Automobile Ins. Co. v. Estate of Simmons,* 84 *N.J.* 28, 36–37, 417 *A*.2d 488 (1980); *O'Keeffe v. Snyder,* 83 *N.J.* 478, 490, 416 *A*.2d 862 (1980).

## A.

■■■ The initial prong of the governmental-interest analysis entails an inquiry into whether there is an actual conflict between the laws of the respective states, a determination that is made on an issue-by-issue basis. *Veazey, supra,* 103 *N.J.* at 248, 510 *A*.2d 1187. The particular issue to be resolved in this case—whether the action was filed timely—is subject to an obvious and direct conflict between Georgia's ten-year statute of repose and New Jersey's two-year statute of limitations.

The Georgia statute of repose bars the commencement of strict products-liability actions "after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury." *O.C.G.A.* § 51–1–11(b)(2). *See Chrysler Corp. v. Batten,* 264 *Ga.* 723, 450 *S.E.*2d 208, 212 (noting "strict-liability actions filed more than ten years after the 'date of the first sale for use or consumption of' the product are completely barred"), *rev'd on other grounds,* 264 *Ga.* 723, 450 *S.E.*2d 208 (1994); *LFE Corp. v. Edenfield,* 187 *Ga.App.* 785, 371 *S.E.*2d 435, 436 (1988) (ruling that where statute of repose was enacted both before injury occurred and before complaint was filed, statute applies even if first sale occurred before statute's enactment). Ms. Gonzalez's accident occurred more than ten years after defendant made its "first sale for use" of the shaker machine, in November 1977. It is undisputed that this action is barred by Georgia's ten-year statute of repose applicable to products-liability actions.

New Jersey law provides that personal-injury actions, including those based on strict-products liability, are governed by a two-year statute of limitations. *N.J.S.A.* 2A:14–2. It is clear that under New Jersey's statute of limitations, plaintiff's suit would not be barred because the complaint was filed less than two years after Ms. Gonzalez' accident.

### B.

The second prong of the governmental-interest analysis seeks to determine the interest that each state has in resolving the specific issue in dispute. That analysis requires the court to "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Veazey, supra,* 103 *N.J.* at 248, 510 *A.*2d 1187. We look first to the policies that underlie the respective state statutes that are in conflict in this case.

In 1978, the Georgia legislature enacted its statute of repose, *O.C.G.A.* § 51–1–11(b)(2), as an amendment to its strict products-

liability statute. *Daniel v. American Optical Corp.*, 251 *Ga.* 166, 304 *S.E.*2d 383, 384 (1983). In *Love v. Whirlpool Corporation*, 264 *Ga.* 701, 449 *S.E.*2d 602 (1994), the Georgia Supreme Court explained that its legislature adopted the statute of repose to serve the dual purposes of stabilizing insurance underwriting and eliminating stale claims. In so concluding, the court indicated that the statute of repose was the legislature's response to a 1978 report of the Senate Products Liability Study Committee that addressed insurance-industry problems generated by the open-ended liability of manufacturers, and recommended "that a ten-year statute of repose be enacted." *Id.* 449 *S.E.*2d at 605. Just one month after its decision in *Love,* the Georgia Supreme Court again had occasion to address the statute of repose. *Chrysler Corp., supra,* 450 *S.E.*2d at 211–13. There the court reiterated: "The ten-year statute of repose was enacted in order to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims and stabilize products liability underwriting." *Id.* at 212.

New Jersey's statute of limitations applicable to personal-injury actions reflects well-articulated policy. In *Rivera v. Prudential Property & Casualty Ins. Co.*, 104 *N.J.* 32, 39, 514 *A.*2d 1296 (1986), the Court stated the rationale for statutes of limitation:

> The purposes of statutes of limitations, oft-repeated by this Court, are two-fold: (1) to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims, and (2) 'to penalize dilatoriness and serve as a measure of repose.' *E.g., Ochs v. Federal Ins. Co.,* 90 *N.J.* 108, 112, 447 *A.*2d 163 (1982) (quoting *Farrell v. Votator Div. of Chemetron Corp.,* 62 *N.J.* 111, 115, 299 *A.*2d 394 (1973).

The purpose underlying any statute of limitations is "to 'stimulate to activity and punish negligence' and 'promote repose by giving security and stability to human affairs.'" *Savage v. Old Bridge–Sayreville Medical Group, P.A.*, 134 *N.J.* 241, 248, 633 *A.*2d 514 (1993) (quoting *O'Keeffe, supra,* 83 *N.J.* at 491, 416 *A.*2d 862 (quoting *Wood v. Carpenter,* 101 *U.S.* 135, 139, 25 *L.Ed.* 807, 808 (1879))). In addition to encouraging the diligent and timely

prosecution of claims, the statute of limitations is subject to the "discovery rule." *See Savage, supra,* 134 *N.J.* at 246–50, 633 *A.*2d 514. That dimension of the statute of limitations incorporates flexible, equitable considerations based on notions of fairness to the parties and the justice in allowing claims to be resolved on their merits. *O'Keeffe, supra,* 83 *N.J.* at 491, 416 *A.*2d 862. We note, further, that New Jersey's statute of limitations applies to all personal-injury actions, including those based on strict products-liability. *Apgar v. Lederle Laboratories,* 123 *N.J.* 450, 455, 588 *A.*2d 380 (1991); *Vispisiano v. Ashland Chemical Co.,* 107 *N.J.* 416, 426, 527 *A.*2d 66 (1987). New Jersey has no special rule, similar to Georgia's statute of repose, governing the accrual or limitation of products-liability actions.

■ Whether the policy that underlies the law of a state gives rise to a governmental interest calling for the application of that state's law depends on the nature of the contacts that the state has to the litigation and to the parties. The kind of analysis of those contacts to be undertaken is exemplified by *Heavner v. Uniroyal, Inc.,* 63 *N.J.* 130, 305 *A.*2d 412 (1973) and an earlier decision, *Marshall v. Geo. M. Brewster & Son, Inc.,* 37 *N.J.* 176, 180 *A.*2d 129 (1962).

In *Heavner,* residents of North Carolina sued a New Jersey corporation for personal injury that resulted when a truck tire manufactured by the defendant blew out while one of the plaintiffs was driving a truck in North Carolina. 63 *N.J.* at 133–34, 305 *A.*2d 412. The defendant was a national corporation whose only contact with New Jersey was that it was incorporated here. *Id.* at 134, 305 *A.*2d 412. There was no allegation that defendant had actually manufactured the allegedly defective tire in New Jersey. The Court concluded that New Jersey had "no substantial interest in the matter," and consequently the statute of limitations of North Carolina would be applied. *Id.* at 141, 305 *A.*2d 412.

*Marshall* involved an action by an Ohio resident against various New Jersey corporations that were part of a joint venture doing construction work on a railroad crossing in Pennsylvania. 37 *N.J.*

at 178, 180 A.2d 129. The plaintiff's decedent was killed in an automobile accident at that railroad crossing. *Ibid.* The defendants in *Marshall* were not merely incorporated in New Jersey, but actually had their principal places of business here. *Id.* at 188, 180 A.2d 129. The Court approved of the application of New Jersey limitations law, rather than Pennsylvania's more restrictive limitations law. *Id.* at 176, 180 A.2d 129.

The Court in *Heavner* acknowledged the analysis and result reached in the *Marshall* case. It noted that *Marshall*, in contrast to *Heavner*, "presented a different factual picture," and that *Marshall* exemplified a case where "there may very well be" a significant interest that could require the application of New Jersey limitations law. *Heavner, supra,* 63 *N.J.* at 141 n. 6, 305 A.2d 412. As explained by Judge Pressler in her dissenting opinion below, the critical factual distinction between *Heavner* and *Marshall* was that the defendant in *Marshall* had a significant presence in New Jersey by virtue of its doing business here, while the defendant in *Heavner* had a "virtual nonpresence" because its only contact with New Jersey was that it was incorporated in this State. 276 *N.J.Super.* at 593, 648 A.2d 517.

In this case, as in *Marshall*, the machine causing the fatal injury was manufactured in, and placed into the stream of commerce from, this State. The question thus posed is whether, in the context of this litigation, those contacts give rise to a substantial governmental interest that would be served by applying New Jersey's statute of limitations and permitting this action to proceed.

The courts below acknowledged that, in this case, the only New Jersey interest implicated by its contacts with the parties is that derived from the status of the defendant as a domestic manufacturer. That interest is in deterring the manufacturing of unsafe products within its borders. However, both the trial court and Appellate Division majority determined that a deterrent interest is not significant enough to warrant the application of New Jersey's

limitations law. 278 *N.J.Super.* at 478–79, 651 *A.*2d 503, 276 *N.J.Super.* at 589–90, 648 *A.*2d 517.

 This Court has recognized generally that a purpose of the tort laws is to encourage reasonable conduct, and, conversely, to discourage conduct that creates an unreasonable risk of injury to others. *E.g., Hopkins v. Fox & Lazo,* 132 *N.J.* 426, 448, 625 *A.*2d 1110 (1993); *People Express Airlines, Inc. v. Consolidated Rail Corp.,* 100 *N.J.* 246, 255, 495 *A.*2d 107 (1985). That deterrent goal of the tort laws is effectuated through the recognition of a duty to exercise reasonable care and the imposition of liability for the breach of such a duty. *E.g. Weinberg v. Dinger,* 106 *N.J.* 469, 486–87, 524 *A.*2d 366 (1987). We note also that Georgia has recognized that "courts are concerned not only with compensation of the victims but with admonition of the wrongdoer" and that the " 'prophylactic' fact of preventing future harm has been quite important in the field of torts." *Denton v. Con–Way Southern Express, Inc.,* 261 *Ga.* 41, 402 *S.E.*2d 269, 270 (1991) (quoting *Prosser & Keeton on Torts* § 4 at 25 (5th ed. 1984)), *overruled on other grounds, McKin v. Gilbert,* 208 *Ga.App.* 788, 432 *S.E.*2d 233 (1993).

 The interest in deterrence has been recognized as a relevant factor to be considered in choice-of-law decisions. *See, e.g., Pfau v. Trent Aluminum Co.,* 55 *N.J.* 511, 524, 263 *A.*2d 129 (1970) (noting "We are not certain that a defendant's domicile lacks an interest in seeing that its domiciliaries are held to the full measure of damages or the standard of care which that state's law provide[s] for."); *Mueller v. Parke Davis,* 252 *N.J.Super.* 347, 354–55, 599 *A.*2d 950 (App.Div.1991); *Seals v. Langston Co.,* 206 *N.J.Super.* 408, 412, 502 *A.*2d 1185 (App.Div.), *certif. denied,* 104 *N.J.* 386, 517 *A.*2d 392 (1986); *Pine v. Eli Lilly & Co.,* 201 *N.J.Super.* 186, 192, 492 *A.*2d 1079 (App.Div.1985); *Deemer v. Silk City Textile Mach. Co.,* 193 *N.J.Super.* 643, 650, 475 *A.*2d 648 (App.Div.1984).

The goal of deterrence, acknowledged generally to be part of tort law, is especially important in the field of products-liability

law. In *Fischer v. Johns–Manville Corp.*, 193 *N.J.Super.* 113, 124, 472 *A.*2d 577 (1984), *aff'd*, 103 *N.J.* 643, 512 *A.*2d 466 (1986), the Appellate Division noted that since *Henningsen v. Bloomfield Motors, Inc.*, 32 *N.J.* 358, 161 *A.*2d 69 (1960), this State's judiciary has been "in the vanguard of the development of a responsive and progressive products liability law" and "has led the country in its ideological commitment to the protection of consumers and concomitant consequence of inducing those who place products into the stream of commerce to act with social responsibility." Judge Pressler observed in her dissent below: "the development of [products liability law in New Jersey] and the consequent imposition of strict liability on manufacturers has been a powerful force—perhaps the most powerful force—in effecting, over the last two and a half decades, product safety and social responsibility by industry." 276 *N.J.Super.* at 594, 648 *A.*2d 517.

We conclude that this State has a strong interest in encouraging the manufacture and distribution of safe products for the public and, conversely, in deterring the manufacture and distribution of unsafe products within the state. That interest is furthered through the recognition of claims and the imposition of liability based on principles of strict products-liability law.

Both the Appellate Division majority and the trial court found that the interest in deterrence would be outweighed by the possibility of unduly discouraging manufacturing in New Jersey if products-liability actions were allowed in circumstances where they would be barred in the courts where the cause of action arose. 278 *N.J.Super.* at 479, 651 *A.*2d 503 (quoting *Deemer*, *supra*, 193 *N.J.Super.* at 650–652, 475 *A.*2d 648); 276 *N.J.Super.* at 589–90, 648 *A.*2d 517. The courts below relied on *Seals, supra*, 206 *N.J.Super.* 408, 502 *A.*2d 1185.

*Seals* involved a New Jersey action for damages for injuries caused in Louisiana by a defective machine manufactured in New Jersey by a New Jersey corporation. 206 *N.J.Super.* at 409, 502 *A.*2d 1185. The court recognized a "noticeable difference" between *Heavner* and the case before it, namely, that in *Seals*, New

Jersey was the place of manufacture of the allegedly defective machine. *Id.* at 411, 502 *A.*2d 1185. Notwithstanding that difference, the court found Louisiana's limitations law applicable, *ibid.*, concluding that New Jersey's deterrence interest did not warrant the application of New Jersey's limitations law. 206 *N.J.Super.* at 413–14, 502 *A.*2d 1185. It also observed that the court has "no significant interest in exposing New Jersey manufacturers to greater jeopardy in our courts than they would face where a cause of action against them arose, or in a disinterested forum provided by another state," further explaining that "if we were to apply rules that favor foreign plaintiffs against local manufacturers, when we could not do so against foreign ones, we would pointlessly discriminate against our own residents." *Id.* at 412–13, 502 *A.*2d 1185.

We disagree with the rationale employed in *Seals* and the lower courts' reliance on that decision. In light of this State's commitment to protection of the public against the manufacture and distribution of unsafe products and the strong governmental interest in deterrence against such practices, it does not seem "pointless" to apply this State's statute of limitations to resident manufacturers, even if the suit would be barred against foreign manufacturers. The difference in result is grounded in the distinctive policy concerns that each state has in making its domestic manufacturers amenable to suits. A governmental interest based on a policy of deterrence that seeks to discourage domestic manufacturers from the manufacture and distribution of unsafe products through the allowance of a products-liability action is not unnecessarily burdensome nor is it discriminatory or baseless.

It is significant that New Jersey's statute of limitations does not single out manufacturers or distributors of manufactured products as a class meriting special protection from personal-injury tort actions. New Jersey recently enacted a statute that provides and clarifies certain standards in products-liability actions, yet leaves intact many common-law principles that define that cause of action. *N.J.S.A.* 2A:58C–1 to –11; Senate Judiciary Committee,

Statement to Senate Bill No. 2805 at 1 (July 22, 1987). See, e.g., Roberts v. Rich Foods, Inc., 139 N.J. 365, 374–75, 654 A.2d 1365 (1995). That statute does not prescribe a limitations period that is more lenient toward or protective of manufacturers than the general personal-injury limitations law applicable to other tortfeasors. It is also significant in the circumstances of this litigation, a strict-products liability action, that New Jersey does not have a statute of repose that qualifies or limits the liability of manufacturers. Although our Legislature has enacted a statute of repose for certain causes of actions, see N.J.S.A. 2A:14–1.1 (creating ten-year statute of repose for claims arising out of defective and unsafe conditions of improvements of real property), it has not enacted such a statute for personal-injury actions based on unsafe products.

The lower courts also concluded that application of New Jersey's statute of limitations would encourage forum shopping, which would increase litigation and needlessly burden the courts of this State. 278 N.J.Super. at 479, 651 A.2d 503 (quoting Deemer, supra, 193 N.J.Super. at 650–653, 475 A.2d 648); 276 N.J.Super. at 589–90, 648 A.2d 517. However, this State's interest against forum shopping will not be compromised by the application of New Jersey's statute of limitations in the circumstances of this litigation. In essence, the policy against forum shopping is intended to ensure that New Jersey courts are not burdened with cases that have only "slender ties" to New Jersey. See Henry v. Richardson–Merrell, Inc., 508 F.2d 28, 35 (3d Cir.1975). In this case, plaintiff does not seek to use New Jersey's court system to litigate a dispute that has only a slight link to New Jersey and where the only plausible reason to select this State is because it is a hospitable forum. This action is materially connected to New Jersey by the fact that the allegedly defective product was manufactured in and then shipped from this State by the defendant-manufacturer.

We are satisfied, therefore, that New Jersey in this case has a cognizable and substantial interest in deterrence that would be

furthered by the application of its statute of limitations, and that interest is not outweighed by countervailing concerns over creating unnecessary and discriminatory burdens on domestic manufacturers or by fears of forum shopping and increased litigation in the courts of this State.[2]

### C.

The determination that New Jersey in this litigation has a cognizable and substantial interest does not end the inquiry into whether the choice of its statute of limitations law is appropriate to resolve the conflict over whether this action is time barred. New Jersey's interest in deterrence must be compared and weighed against any governmental interest that Georgia has in applying its statute of repose in light of Georgia's contacts with the litigation and the parties.

The Appellate Division upheld the conclusion of the trial court that Georgia has an important governmental interest derived from its statute of repose. In effect, the trial court characterized the Georgia statute of repose as expressing a broad policy to encourage manufacturing generally by barring products-liability actions after ten years from the date of sale of an alleged unsafe product; it rejected as "parochial" the notion that Georgia intended by its statute of repose to benefit only Georgia manufacturers. 278 N.J.Super. at 479, 651 A.2d 503. However, Georgia's statute of repose was not enacted to create generally a favorable environment for manufacturing. Rather, the Georgia statute of repose was enacted as an effort to stabilize the Georgia insurance industry and to keep stale claims out of Georgia courts. *Love, supra,* 449 S.E.2d at 605. *See* discussion, *supra* at 485, 679 A.2d at 109.

---

[2] Judge Pressler also recognized two other New Jersey interests in applying New Jersey limitations law to this action. These were (1) "our jurisprudential commitment to the victims of defective products" and (2) "the recognition that the place where a product manufactured here ultimately comes to rest and causes injury is a matter of pure fortuity." 276 N.J.Super. at 596, 648 A.2d 517 (Pressler, J., dissenting).

Thus, the question to be addressed is whether, in this case, those policy concerns give rise to a governmental interest that calls for the application of Georgia's statute of repose.

The answer is clear. Georgia has no contacts with the defendant manufacturer or with this lawsuit. Hence, its special policy concerns over the impact of "open-ended liability" on its insurance industry and stale claims on its courts do not, in the context of this litigation, give rise to a governmental interest that must be protected by applying its statute of repose to foreclose this suit in New Jersey.

The dissent asserts that a decision to allow the action to go forward in New Jersey would run counter to Georgia's interest in stabilizing the products-liability insurance rates in Georgia. *Ante* at 484–85, 679 *A.2d* at 108–09. It suggests the decedent's employer may become involved in the New Jersey litigation on the issue of whether it misused or substantially changed the machine that is the subject of this products liability action. It is not contended, however, that the Georgia manufacturer could become a party to this action. *See O.C.G.A.* § 34–9–11 (providing that, where applicable, workers' compensation remedy is employee's exclusive remedy against statutory employer); *Smith v. Gortman,* 261 *Ga.* 206, 403 *S.E.*2d 41 (1991) (holding that policy of the exclusive remedy provision of the worker's compensation law is served equally whether employee is injured or killed). Nor is it likely that the inconvenience to the decedent's employer that may be entailed in participating in discovery or in responding to subpoenas in conjunction with the New Jersey litigation could have any significant underwriting influence in respect of products-liability insurance rates in Georgia.

The *Deemer* case, relied on by the lower courts to reach a different conclusion, is distinguishable. In that case, the court found that the application of New Jersey law to allow an action brought by the North Carolina resident against a manufacturer that was no longer in New Jersey would actually "frustrate the policies of North Carolina's workers' compensation laws." 193

*N.J.Super.* at 651, 475 *A.*2d 648. No Georgia law is frustrated by the application of New Jersey's statute of limitations to allow the action to proceed in this State.

The lower courts were also persuaded by the fact that Georgia's substantive law would apply to the case, and that the Georgia statute at issue is one of repose, as opposed to a standard statute of limitations. 276 *N.J.Super.* at 589, 648 *A.*2d 517, 278 *N.J.Super.* at 480, 651 *A.*2d 503. The Appellate Division majority noted that "New Jersey holds that a statute of repose prevents what might otherwise be a cause of action from arising, whereas a statute of limitations concerns when a cause of action arises, or, once arisen, when it is barred." *Id.* at 589 n. 2, 648 *A.*2d 517 (citing *E.A. Williams, Inc. v. Russo Development Corp.*, 82 *N.J.* 160, 167, 411 *A.*2d 697 (1980)). The lower courts reasoned that because the statute of repose was a substantive law under which "[p]laintiffs have no cause of action in Georgia," *id.* at 589, 648 *A.*2d 517, it was entitled to more weight than a statute of limitations that could serve only as a bar to plaintiff's "Georgia-based right." 278 *N.J.Super.* at 480, 651 *A.*2d 503, 276 *N.J.Super.* at 588–89, 648 *A.*2d 517.

That statutes of repose are generally considered substantive in nature does not compel its selection in this case, even though it is conceded that Georgia's substantive tort law will be applied. Whether Georgia's statute of repose must be applied as a constituent part of its substantive tort law depends not on its characterization as substantive law but on the issue-specific analysis that governs choice-of-law determinations and on whether the contacts that Georgia has with the parties and the litigation create a governmental interest that requires the application of its statute of repose to settle that issue.

The Court in *Veazey* dealt with an analogous issue in deciding whether Florida's marital immunity doctrine should be applied to an action brought in New Jersey involving Florida domiciliaries for injuries arising out of a New Jersey automobile accident. The plaintiff was a passenger in the automobile driven by her husband,

one of the defendants. The conflict posed in that action was whether Florida's marital immunity law or New Jersey law abrogating interspousal immunity should be followed. New Jersey's substantive tort law would apply because the accident occurred in New Jersey; the marital-immunity doctrine was a substantive law. *See, e.g., Tevis v. Tevis,* 79 *N.J.* 422, 400 *A.*2d 1189 (1979); *Merenoff v. Merenoff,* 76 *N.J.* 535, 388 *A.*2d 951 (1978). The critical contact of the State of Florida to the parties was their domicile; that contact served to create an interest on the part of Florida in their marital relationship and whether they should be able to sue one another in light of its policy of marital immunity. In contrast, New Jersey's only contact with these parties was as the geographical site of the automobile accident. New Jersey thus had no governmental interest in the marital relationship of the parties and whether they should be able to sue one another. Accordingly, the Court ruled that New Jersey had no interest that would call for the application of its own policy abrogating interspousal immunity, and, therefore, the Florida marital-immunity doctrine should apply, notwithstanding New Jersey's substantive law would otherwise govern the adjudication.

Here, although the plaintiffs are Georgia residents, that contact with the State of Georgia does not implicate the policies of its statute of repose, which is intended only to unburden Georgia courts and to shield Georgia manufacturers from claims based on product defects long after the product has been marketed or sold. Consequently, the application of Georgia's substantive law in these circumstances does not dictate the inclusion of its statute of repose.

The majority of the Appellate Division further emphasized that "the weight of authority clearly favors following the law of the state with the interest of compensating its residents, where such law conflicts with that of the state having solely a deterrence interest." *Id.* at 590, 648 *A.*2d 517. However, the cases relied on by the majority as making up that "weight of authority" do not suggest, much less require, that the deterrence interest of New

Jersey as the domicile and locus of the defendant manufacturer must yield in this case to the compensation interest of Georgia as the state of domicile of the claimants. *See Mueller, supra,* 252 *N.J.Super.* at 355, 599 *A.*2d 950 (citing *Schum v. Bailey,* 578 *F.*2d 493, 503 (3rd Cir.1978); *Allen v. Volkswagen of America, Inc.,* 555 *F.*2d 361, 364 (3d Cir.1977); *Henry, supra,* 508 *F.*2d at 33; *Heavner, supra,* 63 *N.J.* at 130, 305 *A.*2d 412; *Rose v. Port of New York Authority,* 61 *N.J.* 129, 140, 293 *A.*2d 371 (1972); Pine, *supra,* 201 *N.J.Super.* at 193, 492 *A.*2d 1079; *Deemer, supra,* 193 *N.J.Super.* at 651–52, 475 *A.*2d 648). The results in those cases were based on the particular configuration of state interests to be balanced, and the relative weight of those interests, as dictated by the relevant contacts with the parties. Those cases may be distinguished from the present case on one of two grounds, either because the state with the deterrent interest had insubstantial contacts with the defendant, thus minimizing the weight of the deterrence interest in comparison to the compensation interest of the plaintiff's domicile, *see, e.g., Allen, supra,* 555 *F.*2d at 364; *Henry, supra,* 508 *F.*2d at 33; *Pine, supra,* 201 *N.J.Super.* 186, 492 *A.*2d 1079; *Deemer, supra,* 193 *N.J.Super.* at 651–52, 475 *A.*2d 648; or because both states in the conflict had deterrent interests so that the interests of the state with both a compensation *and* a deterrence interest outweighed the interest of the state having only a deterrence objective, *see, e.g., Schum, supra,* 578 *F.*2d at 503; *Rose,* 61 *N.J.* at 140, 293 *A.*2d 371.

By contrast, New Jersey's policy in deterring tortious conduct of manufacturers is implicated by the defendant's material contacts with this State, and thus represents a substantial interest to be weighed against Georgia's interest in compensation of its resident plaintiffs. In the context of this litigation, Georgia's policy of fair compensation for injured domiciliaries is one that allows compensation, except if recovery is sought from a Georgia manufacturer because the defective product causing the accident was sold by that manufacturer more than ten years before the accident. The limitation on fair compensation expressed by that narrow exception is not raised in this case. Application of New

Jersey law will not undermine Georgia's interest in compensating its injured residents because that interest is not actually implicated or compromised by allowing a products-liability action brought by Georgia residents to proceed against a non-Georgia manufacturer.

Finally, we note the trial court's conclusion that in their totality Georgia had more contacts than New Jersey and therefore was the "controlling state," whose law should be applied. *See, e.g.,* Dara Patrick Karam, Note, "Conflicts of Laws—Liberative Prescription," 47 *La.L.Rev.* 1153, 1167 n. 85 (1987). Although the contacts with each state must be compared and weighed, that analysis encompasses only those contacts that bear on the specific issue that is the focus of the legal conflict between the two states. The Appellate Division dissent explained:

> As is made clear by *Veazey v. Doremus,* 103 *N.J.* 244, 248, 510 *A.*2d 1187 (1986), in a proper government interest analysis, choice of law is not a single, immutable decision governing the entire action and all the issues therein arising. Rather, the decision as to whose law to apply must be made issue by issue on the basis of which state has the greatest interest in the application of its own law to that issue.
>
> [276 *N.J.Super.* at 591, 648 *A.*2d 517.]

Here, the narrow issue is whether the action will be deemed time-barred. Georgia's contacts with the litigation and the parties, though numerically greater, are not more significant or weighty than those of New Jersey in generating an interest that calls for the invocation of its laws to preclude a claim in New Jersey solely because of the passage of time.

### III

Defendant argues that it is entitled to summary judgment based on the doctrine of *forum non conveniens.* It contends specifically that "the proofs, witnesses, medical records, and scene of the accident are all in Georgia." Defendant further contends that because the witnesses reside in Georgia, some if not all of them may be unavailable for trial and "there is no method for a New Jersey Court to compel their attendance here for trial."

Neither the trial court nor the Appellate Division addressed defendant's *forum non conveniens* argument. Moreover, defendant did not file a petition for certification in conjunction with this appeal as of right. Therefore, the *forum non conveniens* issue is not properly before the Court. *R.* 2:2–1(a)(2); *Brandenburg v. Brandenburg,* 83 *N.J.* 198, 203, 416 *A.*2d 327 (1980).

We note, however, that a dismissal pursuant to the doctrine of *forum non conveniens* cannot occur if the transfer will result in significant hardship to the plaintiffs. *Wangler v. Harvey,* 41 *N.J.* 277, 286, 196 *A.*2d 513 (1963). Here, without doubt, a dismissal of this action will cause severe hardship to plaintiff. If this action cannot proceed in New Jersey, plaintiff will be left with no forum in which to proceed and will be denied recovery altogether. This Court's case law teaches that where the plaintiff will be so adversely affected by the transfer of jurisdiction, the court may not dismiss the action under the doctrine of *forum non conveniens.*

IV

The judgment of the Appellate Division is reversed, summary judgment is vacated, and the matter is remanded for a determination of the underlying disputed facts and the application of those facts to the choice-of-law question, consistent with this opinion.

GARIBALDI, J., dissenting.

In this appeal, the only issue is whether, in applying New Jersey's "governmental interests" conflicts of law test, Georgia or New Jersey has the paramount interest in this personal injury case. This case arose when a Georgia resident, working at a Georgia food processing factory, was killed when struck by a part from a shaker machine that was manufactured by a New Jersey corporation and placed into commerce more than ten years before the accident. The majority's opinion subjects New Jersey businesses to an increased risk of litigation that would be time-barred in the state where the injured person lives and where the accident

occurred, increases forum shopping and further taxes an already overburdened court system, without offering any countervailing benefit to a New Jersey resident or business. For those reasons, I dissent.

I

It is undisputed that if Georgia law applies, decedent's claim is barred pursuant to Georgia's ten-year statute of repose. Because the machine that caused the injury was sold in 1977 and the injury occurred on February 27, 1991, more than ten years after the initial sale, Georgia's statute of repose bars this action. Conversely, should New Jersey law apply, the claim is not barred as there exists no statute of repose and the claim was brought within New Jersey's two-year statute of limitations.

New Jersey's "governmental interest" conflicts of law test is not based on where a litigant will have the greatest likelihood of success. Instead, the "governmental interest" test requires the court to apply the law of the state with the greatest interest in resolving the issue in the underlying litigation. *Veazey v. Doremus*, 103 *N.J.* 244, 247–49, 510 *A.2d* 1187 (1986); *see State Farm Mutual Automobile Ins. Co. v. Estate of Simmons*, 84 *N.J.* 28, 36–37, 417 *A.2d* 488 (1980); *O'Keeffe v. Snyder*, 83 *N.J.* 478, 490, 416 *A.2d* 862 (1980).

[T]he governmental interest approach to choice of law questions ... requires a two-step analysis in resolving conflicts questions: the court determines first the governmental policies evidenced by laws of each related jurisdiction and second the factual contacts of the parties with the related jurisdiction.

[*Deemer v. Silk City Textile Mach.Co.*, 193 *N.J.Super.* 643, 649, 475 *A.2d* 648 (App.Div.1984) (citations omitted) ].

Applying the two-prong test I am convinced, as was the trial court, *Gantes v. Kason Corp.*, 278 *N.J.Super.* 473, 651 *A.2d* 503 (1993) and the majority of the Appellate Division, *Gantes v. Kason Corp.*, 276 *N.J.Super.* 586, 648 *A.2d* 517 (1994), that Georgia has the paramount interest in this matter, and its law should apply. Indeed, the majority concedes that Georgia's substantive tort law will be applicable. *Ante* at 494, 679 *A.2d* at 114.

There are two major problems with the majority's reasoning. First, it substantially underestimates, misinterprets and misap-

plies Georgia's strong policy in having its statute of repose apply; and second, it focuses solely on New Jersey's interest in deterring the marketing of a defective product and ignores New Jersey's other substantial interests. I turn first to a discussion of Georgia's interest.

## II

As the majority in the Appellate Division stated, "[T]he weight of authority clearly favors following the law of the state with the interest of compensating its residents, where such law conflicts with that of the state having solely a deterrence interest." *Gantes, supra,* 276 *N.J.Super.* at 590, 648 *A.*2d 517. "[F]air compensation of a tortiously injured party is the predominant concern of a personal injury claim for the state of domicile of the injured party, particularly where it is the locus of an industrial accident." *Id.* at 589, 648 *A.*2d 517 (citations omitted). New Jersey's interest in the tortious injury action of a non-domiciliary resident is nonexistent. *Deemer, supra,* 193 *N.J.Super.* at 649, 475 *A.*2d 648. Here the accident occurred in Georgia, the machine was being used in a Georgia factory, decedent was a resident of Georgia who died in Georgia, and decedent's heirs also are residents of Georgia. Accordingly Georgia's contacts to this litigation and its interest in its residents and in accidents that occur in its state are substantially greater than New Jersey's interest.

The majority wrongly concludes that the Georgia Legislature's motives in enacting its ten-year statute of repose are limited solely to parochial concerns within the Georgia court system and the Georgia insurance market, and that those policies therefore are not implicated in the current case. "There is nothing to indicate Georgia's interest is parochial, limited to protecting only manufacturers within its borders." *Gantes, supra,* 278 *N.J.Super.* at 479, 651 *A.*2d 503. Georgia enacted its statute of repose to address the problems generated by the open-ended liability of manufacturers. *Love v. Whirlpool Corporation,* 264 *Ga.* 701, 449 *S.E.*2d 602, 605 (1994). It was "a deliberate recognition of that state's government

interest in allowing its businesses to operate free of the concern that alleged defects will produce product liability claims after the passage of a set period of time." *Gantes, supra,* 278 *N.J.Super.* at 479, 651 *A.*2d 503. Specifically, that statute's purpose was to eliminate stale claims and to reduce and stabilize product-liability insurance rates. Those policy concerns extend to cases, such as this one, outside Georgia's courts.

First, the policy against stale claims is a general concern with respect to all lawsuits. Georgia's policy is certainly implicated if its residents, both individuals and corporations, have to go to other states to testify in cases that would be barred under its statute of repose. This case presents a perfect example of the inconveniences that will be imposed on Georgia residents when barred claims are allowed to be litigated in foreign states. Here the proofs, the witnesses, and medical records, as well as the scene of the accident, are in Georgia. Undoubtedly, to litigate this case, several Georgia residents will have to be witnesses and will have to come to New Jersey to testify. For example, the decedent's fellow employees who previously used the machine and who were present when the accident occurred, most likely will have to testify. Defendant also claims that the sheriff officers who investigated the accident and the medical examiner who performed the autopsy will be called to testify. Thus, Georgia residents will now be forced to participate in litigation on a stale claim, that would be barred under Georgia's statute of repose.

Similarly, allowing lawsuits in New Jersey about accidents that occur in Georgia might well increase insurance costs in that State. In product liability cases, the original manufacturer's defense often is that the product was substantially changed or misused after it left that manufacturer's hands. *Brown v. United States Stove Co.,* 98 *N.J.* 155, 172, 484 *A.*2d 1234 (1984). That defense is particularly relevant in cases where the product has been used for several years by many different companies. The shaker machine at issue was sold in 1977 to Salvo Corp. of Massachusetts for shipment to Snyder's Potato Chips of Berlin, Pennsylvania. It

was subsequently sold around 1985 to Otto Cuyler Associates of New York, who, in turn, sold the machine to the decedent's employer, Dutch Quality House. At this stage of the proceedings, it is impossible to determine whether those were the only companies through whose hands the shaker machine passed and whether any of those companies substantially changed or misused that machine. However, it is reasonable to assume that defendant's attorney will investigate and question the subsequent owners of the machine, including Dutch Quality House, the decedent's employer, to determine if any one of them had substantially changed or misused the shaker machine. It is not unreasonable to assume that, when this case is tried, defendant may seek to join in this lawsuit those prior companies, including the Georgia company, Dutch Quality House, which may be held liable to defendant for a portion of its losses. Such a result will undoubtedly increase the product liability insurance rates in Georgia and contribute to instability in that insurance market.

## III

New Jersey's contacts to this litigation, on the other hand, are at best *de minimus*. The only connection New Jersey has to this claim is that the machine *may* have been manufactured in New Jersey. Although we assume this fact for purposes of the summary judgment motion, there was considerable evidence presented suggesting that the machine was in fact manufactured in New York.[1]

Although the policy identified by the majority, deterring the manufacturing of unsafe products by suing the manufacturer is a laudable goal, its results are problematic. As New Jersey courts have previously recognized, liability judgments only have "incidental benefits ... towards the correction of a defective design or the

---

[1] For example, evidence was presented indicating that the letter prefix on the product's serial number was a code designation indicating the Champlain, New York plant as place of manufacture.

deterrence of wrongful conduct with respect to the future distribution of a product." *Deemer, supra,* 193 *N.J.Super.* at 651, 475 *A.2d* 648. As the Appellate Division observed the majority ignores the other important New Jersey interests suggested in *Heavner v. Uniroyal, Inc.,* 63 *N.J.* 130, 305 *A.2d* 412 (1973) and clearly enunciated in *Deemer, supra,* 193 *N.J.Super.* at 650–51, 475 *A.2d* 648, *Mowrey v. Duriron Co., Inc.,* 260 *N.J.Super.* 402, 408, 616 *A.2d* 1300 (App.Div.1992), and in *Seals v. Langston,* 206 *N.J.Super.* 408, 412, 502 *A.2d* 1185 (App.Div.), *certif. denied* 104 *N.J.* 386, 517 *A.2d* 392 (1986). *See Gantes, supra,* 276 *N.J.Super.* at 589, 648 *A.2d* 517. Those other "important interests" were listed by the Appellate Division majority as follows:

> to prevent "exposing New Jersey manufacturers to greater jeopardy in our courts than they would face where a cause of action against them arose, or in a disinterested forum provided by another state", and to avoid forum shopping, overuse of our judicial system, or requiring us to treat local manufacturers sued by foreign plaintiffs more rigorously than foreign manufacturers sued in our courts by foreign plaintiffs.
>
> [*Gantes, supra,* 276 *N.J.Super.* at 589–90, 648 *A.2d* 517 (quoting *Seals, supra,* 206 *N.J.Super.* at 412, 502 *A.2d* 1185).]

This case involves those "other important interests" identified by the Appellate Division majority. By ignoring those other interests, the majority subjects New Jersey manufacturers to an increased risk of litigation that would otherwise be time-barred in the state where the injured person lives and where the accident occurred. Such a result will have a chilling effect on new businesses coming into New Jersey.

Despite the majority's attempt to distinguish prior New Jersey cases, our prior cases all support my conclusion. In *Heavner, supra,* 63 *N.J.* 130, 305 *A.2d* 412, plaintiff, a resident of North Carolina, purchased a truck tire from Pullman, in North Carolina. 63 *N.J.* at 133, 305 *A.2d* 412. The tire was manufactured by Uniroyal, a New Jersey corporation. *Ibid.* Plaintiff sought recovery for personal injuries sustained by him and contemporaneous damages to his car, when a defect in the tire induced a blow out, causing plaintiff to crash. *Ibid.* Plaintiff brought a personal injury action against Pullman and Uniroyal. *Id.* at 134, 305 *A.2d* 412.

No cause of action was ever commenced in North Carolina. *Ibid.* By the time the action was commenced in New Jersey, the statute of limitations in North Carolina had expired, barring any claims. *Ibid.*

The *Heavner* court rejected the mechanical rule that the Statute of Limitations of the forum state must be applied in every action involving a foreign cause of action. *Id.* at 140–41, 305 *A.*2d 412. The court explained:

> We need go no further now than to say that when a cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time the suit is commenced here, New Jersey will hold the suit barred.
>
> [*Id.* at 141, 305 *A.*2d 412].

The court further identified plaintiff's decision to bring the action in New Jersey as "forum shopping," explaining that the plaintiff's motivation was to seek a forum "more favorable than that of North Carolina." *Id.* at 134 n. 3, 305 *A.*2d 412. Holding that New Jersey law should not apply, the court observed: "[W]e do not believe that New Jersey has any sufficient interest in this action to call for the application of its substantive law in preference to that of North Carolina under the governmental interests choice-of-law principles." *Id.* at 135 n. 3, 305 *A.*2d 412. The only possible interest, the court noted, was that Uniroyal was incorporated in New Jersey. However, the court remarked "that is not enough." *Ibid.*

As in *Heavner,* the cause of action in this case arose in the foreign state, all parties were present and amenable to suit in the foreign state and New Jersey had no substantial interest in resolving the issue. Finally, as in *Heavner,* the plaintiffs in this case forum shopped, seeking a forum state that would yield a more favorable result. In view of Georgia's interest in the enforcement of its statute of repose and the fact that all contacts with this case are in Georgia, to permit the application of New Jersey law would encourage the very type of forum shopping this Court rejected in *Heavner.*

*Deemer, supra,* is a case substantially similar to this case. There, a wrongful death action was instituted in the New Jersey Superior Court by plaintiff, individually, and as administratrix ad prosequendum of her deceased husband's estate against Silk City Textile Machinery Co. (Silk City). 193 *N.J.Super.* at 647, 475 *A.*2d 648. Plaintiff's husband, Deemer, suffered a crush-type injury to his left ankle while performing maintenance work on a shear-cut batcher manufactured by Silk City. *Ibid.* Ultimately, Deemer died and the action was instituted, asserting that his death was caused by the injury. *Ibid.* At the time the machine was sold and when the accident occurred, Silk City was a New Jersey corporation doing business nationwide. *Id.* at 648, 475 *A.*2d 648. The machine was also manufactured in New Jersey. At the time of the accident, the machine was being used in a factory in North Carolina. The decedent was, at the time of the accident and the time of his demise, a resident of North Carolina. The decedent also filed a worker's compensation claim in North Carolina. Finally, plaintiff was a resident of North Carolina. *Ibid.*

Reversing the trial court's decision to apply New Jersey law, the *Deemer* court held that "the trial court erred in concluding that the substantive law of New Jersey governed this matter." *Id.* at 649, 475 *A.*2d 648. The court explained that "New Jersey has no interest in protecting the compensation rights of a non-domiciliary resident." *Ibid.* Citing *Heavner, supra,* the *Deemer* court recognized that this Court "appears to evidence a policy of discouraging forum shopping where, as here, the contacts with the state are at best tenuous." *Ibid.*

In applying the two-prong governmental interests test, the *Deemer* court contended that the competing policies at issue are: "(1) those relating to the defect free design and manufacturing of a product and (2) those that regulate the full and fair compensation of the injured party." *Id.* at 650–51, 475 *A.*2d 648. The *Deemer* court concluded:

Whatever incidental benefits a liability judgement may contribute towards the correction of a defective design or the deterrence of wrongful conduct with respect to the future distribution of a product, the principal aim of a product liability or personal injury claim is fairly to compensate the injured party. We therefore determine that the second of the two noted policies must control.

[*Id.* at 651, 475 A.2d 648].

Additionally, the court identified plaintiff's attempt to bring suit in New Jersey as forum shopping. *Ibid.* The North Carolina Legislature, the court explained, did not adopt strict liability in product liability cases. The *Deemer* court held: "North Carolina, having chosen not to afford its own residents the protection of strict liability, there is no compelling reason for us to extend to such non-domiciliary plaintiffs the benefit of our decisional law." *Ibid.*

Furthermore, the court recognized the adverse effect on New Jersey manufacturers of applying New Jersey law under those circumstances.

[T]he effect of holding New Jersey law to be applicable in a matter of this kind is to subject any corporation conducting manufacturing activities in this state against whom a product liability claim is asserted to suit in New Jersey under New Jersey law. Such a holding would have the undesirable consequence of deterring the conduct of manufacturing operations in this state and would likely result in an unreasonable increase in litigation and thereby unduly burden our courts.

[*Ibid.*]

Similarly, in *Seals, supra,* the Appellate Division upheld the application of Louisiana's more restrictive statute of limitations over that of New Jersey, notwithstanding this State's interest in deterring the marketing of defective products by local manufacturers. 206 *N.J.Super.* at 410, 502 A.2d 1185. *Seals* involved a New Jersey action for damages for injuries caused in Louisiana by a defective machine manufactured in New Jersey by a New Jersey corporation. *Id.* at 409, 502 A.2d 1185. Under Louisiana's statute of limitations, the plaintiff's action was time-barred, but under New Jersey limitations law, it was not. *Ibid.*

In *Seals,* the Appellate Division recognized a "noticeable difference" between *Heavner* and the case before it: in *Seals,* New

Jersey was the place of manufacture of the allegedly defective machine. *Id.* at 411, 502 *A.*2d 1185. Notwithstanding that difference, the court found Louisiana's limitations law applicable. *Id.* at 413, 502 *A.*2d 1185. The court in *Seals* concluded that New Jersey's deterrence interest did not warrant the application of New Jersey's limitations law, reasoning:

> We see no significant interest in exposing New Jersey manufacturers to greater jeopardy in our courts than they would face where a cause of action against them arose, or in a disinterested forum provided by another state. Such a course would encourage forum shopping to avoid the statute of limitations of the state where the cause of action arose. It would also encourage overuse of our judicial system, and would require us to treat local manufacturers more rigorously than foreign manufacturers sued in our courts by foreign plaintiffs.
>
> [*Id.* at 412, 502 *A.*2d 1185].

The court further reasoned that "if we were to apply rules that favor foreign plaintiffs against local manufacturers, when we could not do so against foreign ones, we would pointlessly discriminate against our own residents." *Id.* at 413, 502 *A.*2d 1185. The court concluded, "Consistent with *Deemer,* [*supra,* 193 *N.J.Super.* at 651, 475 *A.*2d 648], we hold that New Jersey has no significant interest under the *Heavner* test in deterring and correcting the marketing by local manufacturers of defective machines." *Seals, supra,* 206 *N.J.Super.* at 413–14, 502 *A.*2d 1185.

As in *Deemer* and *Seals,* the injury-causing product involved in this case was manufactured in New Jersey by a New Jersey corporation. As in *Heavner, Deemer* and *Seals,* all other contacts occurred in a foreign state, here Georgia. The plaintiffs and decedents were residents of that foreign state, Georgia, the shaker machine was located in Georgia, the accident occurred in Georgia and plaintiff and decedent's heirs are Georgia residents.

## IV

In this case the respective contacts of the two states dictate the application of Georgia law. Georgia by far has the paramount interest and its law should apply.

Moreover, as the majority of the Appellate Division concluded:

Choice of law in this case requires recognition that deterrence is but one of New Jersey's interests, and that it is outweighed by our policy against forum shopping which exposes local manufacturers to greater burdens than they would face in the state having the most interest in compensation of the injured party.

[*Gantes, supra,* 276 *N.J.Super.* at 590, 648 *A.2d* 517].

I agree with *Heavner, Deemer, Seals,* and the majority in the Appellate Division. The effect of the Court's decision is that every manufacturer located in New Jersey will remain potentially liable regardless of where the accident occurs. The majority's opinion also will open the door to forum shopping. With an already overburdened court system, our goal should be to lessen the strain on the court's limited resources, not to further deplete them.

I would affirm the judgment of the Appellate Division.

Justice COLEMAN, joins in this opinion.

*For reversal*—Justices HANDLER, POLLACK, O'HERN and STEIN—4.

*For affirmance*—Justices GARIBALDI and COLEMAN—2.