

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-17-2004

# Norris v. Harte Hankes Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1084

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Norris v. Harte Hankes Inc" (2004). *2004 Decisions*. Paper 60.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/60

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-1084

_____

GAIL NORRIS,

Appellant

v.

*HARTE-HANKS, INC.; *WAYNE ROSENBERGER;
*LORI ANDRESON; *CHARLES DALL'ACQUA


*Pursuant to Clerk's Order of 2/24/04

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-03583)
District Judge:  Honorable  Joseph E. Irenas

_____

Argued December 6, 2004

Before:  RENDELL and FISHER, *Circuit Judges*, and YOHN,[*] *District Judge*.

(Filed December 17, 2004)

Michael T. Farrell (Argued)
1760 Market Street, Suite 600
Philadelphia, PA  19103
     *Attorney for Appellant*

_____

[*]The Honorable William H. Yohn, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

Lorie E. Almon (Argued)
Christopher H. Lowe
Seyfarth Shaw LLP
1270 Avenue of the Americas, Suite 2500
New York, NY 10020-1801
    *Attorneys for Appellees*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellant Gail Norris appeals the District Court's grant of summary judgment to Defendants on her claims of wrongful discharge under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, *et seq.*, a whistleblowing statute. Because we agree with the District Court that Pennsylvania law, not New Jersey law, governs Norris's claims, we will affirm.

Norris was hired by DiMark Marketing, Inc. in 1996, and reported daily to work at DiMark Marketing's facility in Langhorne, Pennsylvania. In 2000, Harte-Hanks Direct, Inc. ("Direct"), a wholly-owned subsidiary of Defendant Harte-Hanks, Inc. incorporated in Delaware, acquired DiMark Marketing. Following this acquisition, Norris continued to be employed by Direct and continued to report daily to work at the Langhorne, Pennsylvania facility. During the relevant time period, Direct did not own, operate or maintain any facilities in New Jersey, nor did it employ anyone there.

2

One of Norris' primary responsibilities at Direct was to resolve any issues with Direct's subcontractors and to improve vendor relationships. One of the vendors with whom Norris worked was Printing Management Systems, Inc. ("PMSI"), a wholly-owned subsidiary of Harte-Hanks incorporated in Delaware. Norris became suspicious that PMSI was not following Direct's protocol and, perhaps, was falsifying bulk mailing forms, and decided to investigate it herself at PMSI's facility in Bellmawr, New Jersey. Although Norris's investigation did not reveal evidence that PMSI had falsified any bulk mailing forms, she speculated that PMSI might in the future forge bulk mailing forms in order to disguise its failure to meet mailing deadlines set by Direct. Norris disclosed her concerns to her superiors at Direct.

In October 2001, subsequent to Norris's disclosure of PMSI-related complaints to her Direct superiors, Direct terminated Norris's employment. The termination decision was made by Direct personnel located in Pennsylvania; nothing in the record even suggests that either PMSI or Harte-Hanks contributed to the decision to terminate, or that any one or any entity located in New Jersey participated in, much less orchestrated or directed, the termination decision.

Norris filed her complaint in this action in the Superior Court of New Jersey, stating that Defendants[1] violated CEPA by terminating her employment "in retaliation for

---

[1]Norris named as defendants Harte-Hanks, some of her superiors at Direct involved in the decision to terminate her employment (Lori Andresen and Wayne Rosenberger), and a senior vice president of Harte-Hanks at the time of the events at issue (Charles Dall'Acqua). She did not name Direct as a defendant.

her disclosure of, and her refusal to participate in," the alleged misconduct at PMSI's Bellmawr, New Jersey facility. Defendants removed the suit to the District Court on diversity grounds pursuant to 28 U.S.C. § 1332(a)(1) and, following discovery, moved for summary judgment. The District Court granted Defendants' motion, concluding that (a) Pennsylvania law, not New Jersey law, governed Norris's wrongful discharge claims and that (b) Pennsylvania law provided her no redress.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291. We apply plenary review to a district court's grant of summary judgment. *See Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 679 (3d Cir. 2003). "The district court's application of ... choice-of-law rules involves the application of legal principles and therefore is subject to plenary review." *General Ceramics, Inc. v. Firemen's Fund Ins. Companies*, 66 F.3d 647, 651 (3d Cir. 1995).

"A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Echols v. Pelullo*, 377 F.3d 272, 275 (3d Cir. 2004) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)). The District Court was therefore bound to apply New Jersey's choice of law rules in determining which law would govern Norris's claims. The New Jersey Supreme Court has explained that New Jersey's choice-of-law "rule applies a flexible 'governmental-interest' standard, which requires application of the law of the state with the greatest interest in resolving the

4

particular issue that is raised in the underlying litigation." *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996) (citations omitted). This test has two prongs: (1) "an inquiry into whether there is an actual conflict between the laws of the respective states, a determination that is made on an issue-by-issue basis[,]" *Gantes*, 679 A.2d at 109 (citation omitted); and (2) "to determine the interest that each state has in resolving the specific issue in dispute[, an] ... analysis [that] requires the court to 'identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties.'" *Id.* (citation omitted). "If the state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply." *Veazey v. Doremus*, 510 A.2d 1187, 1189 (N.J. 1986) (citations omitted).

Norris argues that we should apply New Jersey's CEPA because she reported to work in New Jersey, was a New Jersey resident, and threatened to disclose alleged misconduct that occurred in New Jersey. Norris's primary contention on appeal is that these facts, read through the lens of the New Jersey Supreme Court's decision in *D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305 (N.J. 1993), require application of New Jersey law. But Norris misreads *D'Agostino*, and the record does not support the existence of genuine issues as to material facts sufficient to require reversal.

In *D'Agostino*, plaintiff, a United States citizen and long-time resident of Switzerland, alleged that he was wrongfully terminated by his Swiss employer, Cilag, a

5

wholly-owned subsidiary of Johnson & Johnson ("J & J"), a New Jersey corporation. D'Agostino alleged that he was terminated for failing to pay a bribe to a Swiss regulatory official involved in the review of a drug that Cilag was attempting to register in Switzerland. He brought a wrongful discharge claim against J & J, alleging that J & J had masterminded the Swiss bribery scheme in New Jersey, and had itself ordered Cilag to fire him in retaliation for his refusal to pay the bribe.

The New Jersey Supreme Court found that New Jersey law would govern the dispute. The court noted the evidence of "J & J's extensive oversight of Cilag[,]" 628 A.2d at 317, as well as J & J's role in orchestrating the Swiss bribery scheme. It stated that the case was "not about regulating just Swiss employment relationships[,]" but rather about regulating the conduct of a parent company located in New Jersey, specifically, that company's engagement in an illegal bribery scheme through its subsidiary's employees, and its ordering the firing of any such employees who refused to cooperate in the scheme. *Id.* at 316 (stating that "the thesis of plaintiff's case is that J & J orchestrated in New Jersey the bribing of a foreign official, allegedly in violation of the [federal Foreign Corrupt Practices Act] and potentially subjecting a United States citizen to criminal prosecution, and plaintiff's subsequent dismissal for failing to pay the bribe."). The court concluded that because the bribery scheme was hatched, and the wrongful discharge directed, by J & J from its New Jersey headquarters, New Jersey law should apply.

Unlike the plaintiff in *D'Agostino*, Norris has failed to adduce evidence creating a genuine issue of material fact as to whether Harte-Hanks or any other Defendant – like J & J in *D'Agostino* – engineered the misconduct which Norris alleged took place at PMSI's Bellmawr, New Jersey facility, that any such engineering took place in New Jersey, or that any of the Defendants made or influenced the decision to terminate her employment in New Jersey. Nor does the record support Norris's statements that she was employed in New Jersey (in addition to Pennsylvania). And Norris's New Jersey residence does her little good – the record demonstrates that she was employed in Pennsylvania, and "it is well-established in New Jersey that claims of a New Jersey resident, relating to out-of-state employment, are governed by the law of the state in which that New Jersey resident is employed." *Brunner v. Allied Signal, Inc.*, 198 F.R.D. 612, 614 (D.N.J. 2001) (citation and internal quotation marks omitted).

Accordingly, the District Court properly refused to apply New Jersey law, and properly granted summary judgment to the Defendants. Therefore, we will affirm.