**RAMADA FRANCHISE SYSTEMS, INC., Plaintiff,**

v.

**TRESPROP, LTD., and Donald P. Boos, Defendants.**

**No. Civ.A. 98–2511–KHV.**

United States District Court, D. Kansas.

Oct. 28, 1999.

Edward R. Spalty, Jill Allison Morris, Armstrong Teasdale LLP, Kansas City, MO, Paul G. Schepers, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, for Plaintiff.

Steven H. Mustoe, Eric C. Carter, Kurlbaum Stoll Seaman & Mustoe, P.C., Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Ramada Franchise Systems, Inc. filed suit against Tresprop, Ltd. and Donald P.

Boos, alleging that they breached a franchise license agreement and a guaranty, and that they infringed plaintiffs trademarks. Defendants claim that the franchise agreement is unenforceable and that they are entitled to damages because Ramada fraudulently induced them to enter into it. This matter comes before the Court on plaintiff's *Motion To Strike The Affidavit Of Leonard R. Smith And Memorandum In Support* (Doc. # 64) filed September 3, 1999; *Ramada Franchise Systems, Inc.'s Motion For Partial Summary Judgment* (Doc. # 49) filed August 2, 1999; and plaintiff's *Motion To Dismiss Defendants' Amended Counterclaim Or In The Alternative, Motion For Summary Judgment On Defendants' Amended Counterclaim* (Doc. # 72) filed September 9, 1999. For reasons set forth below, plaintiffs motion to strike is sustained in part and overruled in part, plaintiffs motion for partial summary judgment is sustained in part, overruled in part and deferred in part, and plaintiff's motion to dismiss is overruled.

### Summary Judgment Standards

■ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

■ The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

■ "[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Motion to Dismiss Standards

■ In determining whether a counterclaim should be dismissed, the Court ap-

plies the same standards that are applied when considering a motion to dismiss a complaint for failure to state a claim on which relief may be granted. *See Federal Deposit Ins. Corp. v. Renda,* 692 F.Supp. 128, 133 (D.Kan.1988); Fed.R.Civ.P. 12(b)(6). All relevant statements of fact contained in the counterclaim must be accepted as true, and the benefit of reasonable inferences given to the complainant. *See Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (court must assume as true all well pleaded facts of complaint and view them in light most favorable to plaintiff). The Court must make all reasonable inferences in favor of the complainant, and construe the pleadings liberally. *See* Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colo.,* 988 F.2d 97, 98 (10th Cir.1993). The issue is not whether the complainant will prevail, but whether the complainant is entitled to offer evidence to support its claims.

The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the complainant can prove no set of facts in support of its theories of recovery that would entitle it to relief. *See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). Although the complainant need not precisely state each element of its claims, the complainant must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

### Discussion

### I. Plaintiff's Motion To Strike

■ Plaintiff asks the Court to strike the affidavit of Leonard Smith, which defendants attached to their brief in opposition to plaintiff's motion for summary judgment, because (1) defense counsel obtained the affidavit as a result of an alleged improper *ex parte* contact and (2) Smith's statements are conclusory. Plaintiff argues that ethical rules prohibit defense counsel from contacting Smith without the consent of opposing counsel. As the Court explained at the hearing on September 3, 1999, however, Rule 4.2 of the ABA Model Rules of Professional Conduct (same as Kan.Sup.Ct.R. 226) does not prohibit counsel from contacting unrepresented former managerial employees of an opposing party. *See Aiken v. Business & Indus. Health Group, Inc.,* 885 F.Supp. 1474, 1476–79 (D.Kan.1995); ABA Comm. on Ethics and Prof. Responsibility, Formal Op. 91–359, at 6 (March 22, 1991).

■ Plaintiff also contends that the following statement (contained in paragraph 8 of Smith's affidavit) should be stricken as conclusory and speculative: "With regard to at least one of the two Topeka-area Ramada franchises, and contrary to the resulting beliefs of Tresprop's representatives (including Don Boos) I do not believe Ramada Franchise Systems actually intended at that time to terminate the existing Topeka-area Ramada franchise." Defendants have not filed any opposition to plaintiff's motion, and Smith's affidavit does not affirmatively demonstrate that he has personal knowledge or is competent to testify regarding the beliefs of Tresprop representatives or the intent of Ramada Franchise Systems, Inc. ("RFS"). *See* Fed.R.Civ.P. 56(e). The affidavit states that Smith was Vice President of Franchise Sales and Development for HFS, of which RFS was a division. The fact that he may be competent to testify regarding such matters is not self-evident, however, from his job title or the activities which he describes in the affidavit. Accordingly, the Court strikes paragraph 8 of the Smith affidavit, attached as Exhibit A to the *Suggestions In Opposition To Plaintiff's Motion For Partial Summary Judgment* (Doc. # 55) filed August 25, 1999.

### II. Plaintiff's Motion For Partial Summary Judgment

#### A. *Factual Background*

The following facts are uncontroverted or deemed admitted for purposes of plain-

tiff's motion for partial summary judgment.

On April 8, 1996, RFS entered into a license agreement with Tresprop, Ltd. (the "License Agreement"). Tresprop agreed to operate a 139–room guest lodging facility in Topeka, Kansas for a 15–year term and to renovate the facility so that it complied with RFS "System Standards" as defined in the License Agreement. *See* License Agreement §§ 3.1, 5. RFS allowed Tresprop to use Ramada's trade name and service marks in association with its operation of the facility. *See id.* § 5. Tresprop agreed to achieve certain scores on periodic quality assurance inspections by RFS and to operate the facility in compliance with RFS "System Standards." *See id.* § 3.4. Tresprop also agreed to make periodic payments to RFS for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees and other fees (collectively, "Recurring Fees"). *See id.* § 7, Schedule C.

RFS had the right to terminate the License Agreement, with notice to Tresprop, for various reasons. Grounds for termination included failure to pay RFS any amount due under the License Agreement, failure to remedy any other breach of the License Agreement within 30 days after receipt of written notice from RFS, and receipt of two or more notices of default from RFS under the License Agreement in any 12–month period, whether or not Tresprop cured the defaults. *See id.* § 11.2. Tresprop agreed that if RFS terminated the License Agreement for any of these reasons, Tresprop would pay liquidated damages within 30 days according to a formula specified in the License Agreement. *See id.* § 12.1.

Effective as of April 8, 1996 (the date of the License Agreement), Boos guaranteed the Tresprop obligations under the License Agreement. Pursuant to the guaranty, Boos agreed that upon default under the License Agreement, he would "immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the [License] Agreement."

On October 23, 1996, RFS inspected the facility for quality assurance ("QA"). By letter dated November 13, 1996, RFS advised Tresprop that the facility had received a failing score in the QA inspection, that Tresprop was therefore in default and that it had 30 days to cure.

On January 3, 1997, RFS conducted a second QA inspection. On January 10, 1997, it advised Tresprop that the facility had received a second failing score and that as a result, the prior default remained uncured. RFS also advised Tresprop that RFS could immediately suspend the facility's reservation system privileges, that Tresprop had seven days to submit and receive approval for a detailed written improvement plan, and that if RFS did not receive and approve the written plan within the time permitted, it might terminate the License Agreement.

On July 15, 1997, RFS conducted a third QA inspection of the facility. By letter dated July 28, 1997, it advised Tresprop that the Facility had received another failing inspection score and that as a result, Tresprop's prior default still remained uncured. RFS also advised Tresprop that it had learned that Ramada guests had stayed in "excluded rooms" in violation of the License Agreement; that RFS could terminate the License Agreement and that if it did so, Tresprop would owe liquidated damages; and that Boos had personally guaranteed the Tresprop obligations.

On August 4, 1997, RFS advised Tresprop that due to the uncured QA defaults, RFS had suspended the facility's reservation system privileges. RFS reiterated its notice that RFS could terminate the License Agreement, and that if it did so, Tresprop would owe liquidated damages under the License Agreement.

On November 14, 1997, RFS terminated the License Agreement and advised Tresprop to immediately discontinue use of all trade names, service marks, signs and other forms of advertising and other indicia of operation as a Ramada facility. RFS also demanded liquidated damages of $278,000.00 as required by the License Agreement, gave Tresprop ten days to de-identify the facility, and instructed Tresprop to pay arrearage and additional monies, including Recurring Fees through the date of termination, in the approximate sum of $53,787.68. RFS alleges that Tresprop failed to pay the agreed Recurring Fees ($61,453.35 as of April 15, 1998) and liquidated damages, in breach of the License Agreement. RFS also alleges that pursuant to the guaranty, Boos is personally liable for all amounts due.

Defendants allege that the License Agreement and guaranty are unenforceable because RFS fraudulently induced them to enter into the agreements. RFS representatives repeatedly told Tresprop that the other two Ramada franchises in Topeka (Site Nos. 515 and 1040) had been or were being terminated. Defendants allege that based on these assurances, they entered into the License Agreement and guaranty on April 8, 1996. As of April 8, 1996, RFS had terminated the Ramada franchise for Site No. 515. The other franchise had not been terminated, however, and it continued to operate as a Ramada franchise. *See* Affidavit of C. Wayne Miller[1] ¶ 30, attached as Exhibit 1 to *Memorandum In Support Of Plaintiff Ramada Franchise System, Inc.'s Motion For Partial Summary Judgment* (Doc. # 50) filed August 2, 1999; Affidavit of Donald P. Boos ¶ 11, attached as Exhibit B to *Suggestions In Opposition To Plaintiff's Motion For Partial Summary Judgment* (Doc. # 55) filed August 25, 1999. On April 9, 1999, RFS sent a letter to the owner of Site No. 1040, explaining that the facility had failed three consecutive QA inspections and that RFS would consider termination in the next few weeks. RFS also explained that it did not want to terminate the franchise and that it looked forward to assisting the franchisee in curing the default.

## B. *Analysis*

RFS alleges that Tresprop breached its obligations under the License Agreement and that Boos breached his obligations under the guaranty. The Court will apply New Jersey law to plaintiff's breach of contract claim against Tresprop under the License Agreement. *See* License Agreement § 17.5 (agreement will be governed by and construed under New Jersey law). Plaintiff has presented evidence that beginning in October 1996, Tresprop breached and defaulted on the License Agreement by repeated failure to operate the facility in accordance with RFS System Standards. In particular, Tresprop failed three QA inspections. RFS then terminated the Tresprop franchise pursuant to section 11.2 of the License Agreement. As of April 15, 1998, Tresprop owed Recurring

---

1. RFS has attached to its reply brief an additional affidavit of C. Wayne Miller, which indicates that RFS terminated the franchise at Site No. 515 on March 28, 1995 and the franchise at Site No. 1040 on April 30, 1996. *See* Affidavit of C. Wayne Miller, attached as Exhibit B to *Reply Memorandum In Support Of Plaintiff Ramada Franchise Systems, Inc.'s Motion For Partial Summary Judgment* (Doc. # 66) filed September 3, 1999. The Court will not consider Miller's affidavit to the extent that it contradicts or adds new material to his original affidavit (Exhibit 1 to *Memorandum In Support Of Plaintiff Ramada Franchise System, Inc.'s Motion For Partial Summary Judgment* (Doc. # 50) filed August 2, 1999). *See Wagher v. Guy's Foods, Inc.,* 765 F.Supp. 667, 671 (D.Kan.1991) ("In pursuit of fairness and proper notice, this court's practice is to deny or exclude summarily all arguments and issues first raised in reply briefs."). Miller stated in his original affidavit that RFS terminated only one of the two existing franchises in Topeka and allowed the other franchise to continue operations. *See* Miller affidavit ¶ 30.

Fees in the amount of $61,453.35. Neither Tresprop nor Boos has paid the Recurring Fees or liquidated damages under the License Agreement. Defendants have not presented any argument or evidence to controvert the RFS evidence that Tresprop breached and defaulted on the License Agreement, that RFS properly terminated the License Agreement pursuant to section 11.2, that Tresprop breached the License Agreement by its failure to pay Recurring Fees, and that Boos breached the guaranty. Accordingly, pursuant to Rule 56(d), the Court finds that these facts exist without substantial controversy and shall be deemed established for purposes of trial. Defendants of course may assert their affirmative defense of fraudulent inducement. This ruling assumes without deciding that the License Agreement is enforceable. In addition, the Court will defer consideration whether the liquidated damages clause in the License Agreement is enforceable.[2]

■ As a defense to enforcement of the License Agreement, and also as an independent counterclaim, defendants allege that RFS fraudulently induced them to contract by representing shortly before April 8, 1996 that the other two Ramada franchises in Topeka had been or "were being" terminated. Affidavit of Leonard Smith ¶ 7; Affidavit of Donald P. Boos ¶ 7; Affidavit of Kyle Cloutier ¶¶ 4–5, 7, attached as Exhibits A, B and C respectively to *Suggestions In Opposition To Plaintiff's Motion For Partial Summary Judgment* (Doc. # 55) filed August 25, 1999. To prevail on their claim of fraudulent inducement, defendants must prove by clear and convincing evidence that (1) RFS made an untrue statement of fact, (2) RFS knew that the statement was untrue or recklessly made it with disregard for the truth, (3) RFS made the statement with the intent to induce defendants to act on the statement, (4) defendants justifiably relied on the statement to their detriment, and (5) defendants sustained injury as a result of their reliance. *See Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 465–67, 738 P.2d 1210, 1228–30 (1987); *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545, 551–52 (1980); *Hutchinson Travel Agency, Inc. v. McGregor*, 10 Kan.App.2d 461, 463–64, 701 P.2d 977, 980 (1985); *see also SL Industries, Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266, 1277 (1992) (outlining similar elements under New Jersey law).

■ RFS argues that defendants have not offered sufficient evidence to show that RFS made a false statement.[3] RFS is correct with respect to one of the two Ramada franchises in Topeka. As of April 8, 1996, Site No. 515 had been terminated. Defendants have produced sufficient evidence, however, for a reasonable jury to find that the RFS statement was false with respect to Site No. 1040. Defendants allege that they entered into the License Agreement and guaranty on April 8, 1996 based on RFS assurances that the other two Ramada franchises had been or were being terminated. One day after RFS made the alleged statement, it sent a letter to the owner of Site No. 1040, explaining that the facility had failed three consecu-

---

2. In their initial opposition memorandum, defendants asked that the Court allow them to take additional discovery on this issue. At the hearing of September 3, 1999, the Court granted that request. At the status conference of October 18, 1999, the Court granted defendants leave to file a supplemental opposition brief on the issue of liquidated damages on or before October 21, 1999. The Court granted plaintiff leave to file a reply brief on or before October 25, 1999.

3. RFS also argues that defendants' counterclaim is barred because the License Agreement is fully integrated and defendants cannot offer extrinsic evidence of prior representations under the parol evidence rule. The Court previously rejected both of these arguments. *See Memorandum And Order* (Doc. # 56) filed Aug. 26, 1999, which is incorporated by reference.

tive QA inspections and that RFS would consider potential termination in the next few weeks. RFS simultaneously explained that it did not want to terminate the franchise and that it looked forward to assisting the franchisee in curing the default. In light of this letter, a reasonable jury could find that RFS falsely represented on or shortly before April 8, 1996 that the franchise for Site No. 1040 was "being terminated."

RFS also contends that the alleged representations related to future conduct of third parties. RFS explains that the franchise agreement with the two other franchisees permitted cure of any default and that the actions of the franchisees in curing any default related to future conduct which was beyond RFS control. The Court disagrees. First, plaintiff has not shown that defendants knew the terms of the franchise agreements with the other franchisees in Topeka. Defendants could have reasonably interpreted the RFS statement as one of existing fact. Even if defendants knew that the other franchise agreements were similar to the License Agreement between RFS and Tresprop, RFS ignores the fact that it may terminate a license agreement in certain circumstances even if the franchisee has cured the default. *See* License Agreement § 11.2. In such circumstances, the subsequent conduct of the franchisee is irrelevant to the RFS right to terminate the agreement. Finally, as noted above, defendants allege that RFS represented that the other two franchises had been or "were being" terminated. Based on the RFS statement and viewing the evidence in the light most favorable to defendants, the Court finds that defendants may have reasonably understood RFS to comment on existing fact within the control of RFS, *i.e.* that RFS was in the process of terminating the franchises and that any attempt

to cure any franchisee default would be unavailing.

For these reasons, the Court sustains in part, overrules in part and defers in part plaintiff's motion for summary judgment.

## III. Plaintiff's Motion To Dismiss Or For Summary Judgment on Defendants' Amended Counterclaim

### A. *Factual Background*

The following is a summary of the allegations in defendants' *Amended Counterclaim* (Doc. # 57) filed August 26, 1999.

In February 1995, Leonard Smith, a regional sales representative for RFS, solicited Tresprop to convert its current guest lodging facility in Topeka, Kansas to a Ramada franchise. RFS already had two Ramada franchises in Topeka. Based on defendants' familiarity with the other two Ramada franchises and their poor quality of service, defendants informed Smith that the value of the Ramada name had diminished in the Topeka area. In response, Smith repeatedly informed defendants that RFS had terminated or was in the process of terminating the other two Ramada franchises. Defendants allege that Smith's representation was false and that it was intended to induce defendants to sign the License Agreement and guaranty.

### B. *Analysis*

 RFS argues that defendants' amended counterclaim is barred by the applicable statute of limitations, and asks the Court to dismiss or enter summary judgment on the counterclaim. Defendants first contend that RFS waived the statute of limitations defense because it did not plead it in response to defendants' original counterclaim.[4] The Court disagrees. In general, the only defenses

4. Defendants also argue that the RFS motion to dismiss is untimely under the Court's

*Scheduling Order* (Doc. # 16) filed March 17, 1999, which provided that motions to dismiss

"that are irrevocably waived by answering an original complaint are those that 'involve[ ] the core issue of a party's willingness to submit a dispute to judicial resolution,'" such as defenses related to personal jurisdiction, venue, process and service. *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (quoting *Gilmore v. Shearson / Am. Express, Inc.*, 811 F.2d 108, 112 (2d Cir.1987)). Accordingly, affirmative defenses, such as statute of limitations, which essentially involve a request for judicial resolution of the dispute, may be first raised in an answer to an amended complaint. *See Asare v. Pegasus Airwave, Inc.*, No. 96–C–8199, 1998 WL 259524, at *5 (N.D.Ill. May 15, 1998) (no waiver of statute of limitations defense); *Pucci v. Litwin*, 828 F.Supp. 1285, 1297 (N.D.Ill.1993) (no waiver of rule 9(b) defense); *see also Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir.1987) (no waiver of statute of limitations defense from defendant's failure to plead in answer where defense included in pretrial order).

■ Even if RFS technically waived its defense by failing to raise it in the original answer, the Court would allow RFS leave to amend. The Court shall freely give plaintiff leave to amend "when justice so requires." Fed.R.Civ.P. 15. Motions to amend are matters of discretion for the

trial court, *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991), and a refusal to grant leave to amend should normally be justified by factors such as futility, undue delay, undue prejudice to the non-moving party, or bad faith of the moving party. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). Here, RFS timely asserted the statute of limitations defense in its *Answer To Amended Counterclaim* (Doc. # 71) filed September 9, 1999. Defendants maintain that if the Court considers the RFS limitations defense, they will be required to conduct substantial additional discovery on the issues of equitable tolling and the date they discovered the alleged fraud. Defendants have not shown that any such discovery involves individuals or documents beyond their own control. Boos and other representatives of Tresprop most likely are the only individuals with knowledge of such facts. The Court finds that defendants are not unduly prejudiced by the RFS assertion of the statute of limitations defense. For these reasons, the Court finds that RFS did not waive its statute of limitations defense by its failure to plead it in the RFS original answer to defendants' counterclaim.

■ RFS claims that the Kansas statute of limitations applies, while defendants

had to be filed on or before April 1, 1999 and that motions for summary judgment had to be filed on or before August 1, 1999. RFS timely filed its motion to dismiss at the same time that it filed its answer, 14 calendar days after the Court granted defendants leave to file an amended counterclaim. Given that defendants' amended counterclaim was not filed until August 26, 1999, RFS has shown excusable neglect for the filing of its motion beyond the April 1 and August 1 deadlines set in the Court's scheduling order.

Pursuant to Rule 15(a), Fed.R.Civ.P., RFS was required to file a response to defendants' amended counterclaim within 10 days after service of the pleading. Defendants served RFS with a copy of their proposed amended counterclaim on April 26, 1999. *See* Exhibit A to the *Suggestions In opposi-*

*tion To Plaintiff's Motion To Dismiss Counterclaim Or. In The Alternative, Motion For Leave To File An Amended Counterclaim* (Doc. # 23) filed April 26, 1999. On August 26, 1999, the Court granted defendants leave to file their amended counterclaim. *See Memorandum And Order* (Doc. # 56) filed August 26, 1999. Excluding the day the Court filed the *Memorandum And Order*, intermediate Saturdays, Sundays and Labor Day, the RFS answer was due September 10, 1999. *See* Fed.R.Civ.P. 6(a). Accordingly, RFS timely filed its answer and motion to dismiss on September 9, 1999. Arguably, RFS was not required to file its answer until September 14, 1999 given that the clerk did not docket and mail a copy of the Court's *Memorandum And Order* until August 27. *See* Fed.R.Civ.P. 6(e).

seek to apply the New Jersey statute—which is six years rather than two years. RFS originally filed this suit in the United States District Court for the District of New Jersey. That court transferred the suit to the District of Kansas upon defendants' request pursuant to 28 U.S.C. § 1404(a). Accordingly, this Court must apply New Jersey choice of law rules. *See Benne v. International Business Machines Corp.*, 87 F.3d 419, 423–25 (10th Cir.1996) (when district court grants change of venue under Section 1404, transferee court is obliged to apply statute of limitations that the transferor court would have applied, including applicable "borrowing statute"). The Court need not resolve the choice of law issue for purposes of the instant motion, because the Court finds that plaintiff's motion to dismiss is not well taken under either Kansas or New Jersey law. The Court nevertheless finds that the issue is important for trial purposes and that it should be addressed at this time.

■ New Jersey courts apply a flexible "governmental-interest" standard, which requires the Court to apply the law of the state with the greatest interest in resolving the particular question at issue. *See Gantes v. Kason Corp.*, 145 N.J. 478, 679 A.2d 106, 109 (1996) (citing *Veazey v. Doremus*, 103 N.J. 244, 510 A.2d 1187 (1986)). The Court must first determine whether the Kansas and New Jersey laws actually conflict. *See Gantes*, 679 A.2d at 109. Here, an obvious conflict exists between the New Jersey six year statute of limitations and the Kansas two year statute.[5] *See id.*

The second part of the New Jersey choice of law analysis requires the Court to "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *See id.* (quoting *Veazey*, 510 A.2d at 1189). The policies that underlie the New Jersey and Kansas statutes of limitations appear to be similar: "(1) to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims, and (2) to penalize dilatoriness and serve as a measure of repose." *Gantes*, 679 A.2d at 110; *see Wheeler v. Lenski*, 8 Kan.App.2d 408, 410, 658 P.2d 1056, 1058 (1983) (statutes of limitations encourage prompt presentation of claims). Both statutes of limitations are subject to the discovery rule, which "incorporates flexible, equitable considerations based on notions of fairness to the parties and the justice in allowing claim to be resolved on their merits." *Id.* at 110; *see* K.S.A. § 60–513(a)(3). The only key difference between the two statutes is that the Kansas legislature has decided that two years is a reasonable time to bring a fraud claim while the New Jersey legislature has chosen six years as the appropriate period.

Next, the Court must evaluate the nature of the contacts that Kansas and New Jersey have to the litigation and the parties. *See Gantes*, 679 A.2d at 110. Here, a Kansas partnership and a Kansas resident filed a counterclaim against a Delaware corporation which has its principal place of business in New Jersey. Defendants allege that RFS fraudulently induced them to enter into a license agreement and a guaranty for a franchise located in Topeka, Kansas. The repre-

---

**5.** In determining the existence of a conflict, defendants argue that the Court should only consider whether the substantive elements of fraud vary, as between New Jersey and Kansas. The New Jersey Supreme Court specifically rejected this approach in *Gantes*. It held that a conflict between the statute of repose of one state and the statute of limitations of another requires a court to address the governmental-interest (choice of law) test. *See Gantes*, 679 A.2d at 109. The court emphasized that "the decision as to whose law to apply must be made issue by issue on the basis of which state has the greatest interest in the application of its own law to that issue." *Id.* at 115.

sentative of RFS who made the alleged statements was based in Irving, Texas. *See* Affidavit of Donald Boos ¶ 3. The RFS representative made the alleged statements to defendants, who were in Kansas. The only connection between the counterclaim and New Jersey is that RFS has its principal place of business in that state. Defendants have not shown any other contacts between the alleged fraud and the State of New Jersey.

Based on these contacts, New Jersey at most has an interest in preventing corporations in its state from fraudulently making representations to potential franchisees. That interest is furthered by its lenient statute of limitations. That interest is remote, however, because the alleged fraud took place in Kansas, involved a Kansas franchise location and was allegedly perpetrated by a RFS representative from Texas. *See Fu v. Fu*, 160 N.J. 108, 733 A.2d 1133, 1141 (1999) (state where harmful conduct took place generally has greater interest in deterrence). On the other hand, Kansas has substantial interests which underlie its two year statute of limitations—to encourage litigants to pursue suit within a reasonable time so opposing parties have a fair opportunity to defend, and to penalize dilatoriness. *See Gantes*, 679 A.2d at 110; *Wheeler v. Lenski*, 8 Kan.App.2d at 410, 658 P.2d at 1058. These interests are promoted by the application of the Kansas statute. On balance, the interests of the State of Kansas which underlie its statute of limitations are more substantial than the interest of New Jersey in preventing New Jersey corporations

from making fraudulent representations in Kansas regarding franchises in Kansas. *Cf. Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412, 414 n. 3 (N.J.1973) (fact that defendant is incorporated in New Jersey is insufficient). If the Court held otherwise, it would encourage forum shopping and would needlessly burden New Jersey courts. *See Keil v. National Westminster Bank, Inc.*, 311 N.J.Super. 473, 710 A.2d 563, 572 (1998).

The Court's conclusion also is consistent with the New Jersey Supreme Court's decision in *Heavner*. In *Heavner*, the court held that

> when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied,[6] and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will 'borrow' the limitations law of the foreign state.

*Id.* at 418. Accordingly, the Court finds that New Jersey would borrow the Kansas statute of limitations in this case, and apply it to defendants' counterclaim.

As noted above, Kansas law imposes a two year statute of limitations for fraud claims. *See* K.S.A. § 60–513(a)(3). A cause of action for fraud accrues when claimant discovers or reasonably should have discovered the facts necessary to know of the fraud. *See id.; Robinson v. Shah*, 23 Kan.App.2d 812, 825,

**6.** Based on the respective contacts and interests of New Jersey and Kansas discussed above, the Court finds that Kansas substantive law would apply. The fraudulent statements were made in Kansas to Kansas residents who sustained damages in Kansas. Its interest in providing a meaningful remedy to its citizens is both obvious and substantial. New Jersey's only contact and possible interest in the action is that RFS has its principal place of business in the state. That interest is out-weighed, however, by the interests of the State of Kansas to deter fraudulent conduct in Kansas and to provide compensation to victims who are Kansas residents. *See Fu*, 733 A.2d at 1141 (citing Restatement (Second) of Conflict Of Laws § 145); *see also* Restatement (Second) of Conflict Of Laws § 148 (in fraud actions, if plaintiff's reliance takes place in same state where the false representation was made or received, court generally should apply local law of that state).

936 P.2d 784, 794 (1997). Expiration of the statute of limitations is an affirmative defense and a claimant is not required to negate an affirmative defense in its complaint. *See Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993) (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)), *cert. denied,* 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994). Rather, counterclaim defendant Ramada has the burden to raise the issue of compliance with the statute of limitations. *See Schacht v. Bacala & Shoop Ins. Services,* No. 91–C–2228, 1993 WL 469909, at *3, 5, (N.D.Ill.1993). Defendants' counterclaim does not contain sufficient information for the Court to determine when defendants discovered that RFS had not terminated one of the other two Ramada franchises in Topeka. Based on defendants' counterclaim, RFS has not shown as a matter of law that defendants discovered or should have discovered the alleged fraud on the date they entered into the License Agreement with plaintiff, or that the alleged fraud was reasonably ascertainable on that date. Thus the RFS motion to dismiss should be overruled.

RFS requests, in the alternative, that the Court grant summary judgment on the issue. The Court declines to convert the RFS motion to one for summary judgment, however, because it fails to comply with D.Kan.Rule 56.1 and the Court's *Revised Scheduling Order* (Doc. # 62) filed August 30, 1999. In particular, RFS presented its statement of uncontested facts in its reply brief, in a footnote. Because RFS did not file its reply brief until October 4, 1999, defendants have not had an adequate opportunity to respond to these facts so that the Court may decide the motion before trial on November 2, 1999. Even if the Court were to consider the RFS factual statement as uncontested, RFS has not shown when defendants discovered that RFS had not terminated one of the other two Ramada franchises in Topeka, or when defendants reasonably should have discovered such information. RFS bears the burden to establish this fact to prevail on its motion for summary judgment. *See, e.g., Schultz v. Talley*, No. 90–0084–CV–W–8, 1991 WL 538754, at *6 (W.D.Mo. Oct.15, 1991); *Field v. Freedman*, No. 81–2075–S, 1986 WL 379754, at *11 (D.Kan. July 30, 1986). Counsel's conclusion that defendants knew or should have known of such information because they operated a Ramada franchise in the same city is unsupported by any record evidence. For these reasons, the Court will not convert plaintiff's motion to dismiss to one for summary judgment. The RFS motion to dismiss is overruled in its entirety.

**IT IS THEREFORE ORDERED** that *Ramada Franchise Systems, Inc.'s Motion For Partial Summary Judgment* (Doc. # 49) filed August 2, 1999, be and hereby is **SUSTAINED in part, OVERRULED in part,** and **DEFERRED in part.** The RFS motion is overruled with respect to the enforceability of the License Agreement based on defendants' fraudulent inducement defense. The RFS motion is sustained with respect to the issues that Tresprop breached and defaulted on the License Agreement, that RFS properly terminated the License Agreement pursuant to section 11.2, that Tresprop breached the License Agreement by its failure to pay Recurring Fees, and that Boos breached the guaranty. As explained above, this ruling assumes without deciding that the License Agreement is enforceable. The Court defers consideration whether the liquidated damages clause in the License Agreement is enforceable.

**IT IS FURTHER ORDERED** that plaintiff's *Motion To Dismiss Defendants' Amended Counterclaim Or In The Alternative, Motion For Summary Judgment On Defendants' Amended Counterclaim* (Doc. # 72) filed September 9, 1999, be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that plaintiff's *Motion To Strike The Affidavit Of Leonard R. Smith And Memorandum In Support* (Doc. # 64) filed September 3, 1999, be and hereby is **SUSTAINED in part** and **OVERRULED in part.** Paragraph 8 of the Affidavit of Leonard Smith, attached as Exhibit A to *Suggestions In Opposition To Plaintiff's Motion For Partial Summary Judgment* (Doc. # 55) filed August 25, 1999, is **STRICKEN.**